**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:

PAR 5 PROPERTY INVESTMENTS, LLC,

            Debtor.

Case No. 21-22404-A-11

MF-2, UST-2

**MEMORANDUM**

Argued and submitted on October 3, 2022
at Sacramento, California
Honorable Fredrick E. Clement, Bankruptcy Judge Presiding

Appearances:    Iain A. Macdonald, Macdonald Fernandez LLP
for Par 5 Property Investments, LLC; Loris
L. Bakken for Tracy Hope Davis, United
States Trustee for Region 17

Chapter 11 debtors may employ lawyers at the expense of the estate, provided they do not hold adverse interests. Debtor hired a law firm to file a Subchapter V, Chapter 11 bankruptcy; a security retainer was paid and was deposited into the firm's trust account. Post-petition and without court approval, the firm paid its own pre-petition fees from the trust account. That transaction is avoidable. Does the firm hold an interest adverse to the estate?

**I.     FACTS**

   **A.     Par 5 Investments Files Bankruptcy**

Par 5 Property Investments, LLC ("Par 5 Investments") is a limited liability company. Its members are Joseph Francis Prach ("Prach") and by Jane Sluse. Statement of Financial Affairs Item No. 28, ECF No. 36. Par 5 Investments did business as Auburn Valley Golf and Event Center in Auburn, California. It offered paying guests the use of a 17-acre golf course, club house, pro-shop, and event center.

Par 5 Investments was under financial pressure. Its most vocal and largest creditor was Sutherland Grantor Trust, Series IV (the "Sutherland trust"). As is frequently the case, distrust between Par 5 Investments and Sutherland trust overshadowed Par 5 Investments financial problems.

Par 5 Investments sought the assistance of Macdonald Fernandez LLP and one of its partners, Iain Macdonald ("Macdonald"). Macdonald is a named partner in Macdonald Fernandez LLP, which "specializes in bankruptcy and related litigation." Macdonald has upwards of 50 years in practice experience and has represented debtors and creditors in "large and complex bankruptcy cases." First Interim Application for Compensation 3:1-4, 7:21-26, ECF No. 224. In late June 2021, Par 5 Investments retained Macdonald Fernandez LLP for the purposes of

filing a Subchapter V Chapter 11 bankruptcy and the parties signed a

fee agreement.  As pertinent here, that agreement provided:

> 1.     IDENTIFICATION OF PARTIES.  This Legal Services
> Agreement (this "Agreement") is made between MACDONALD
> FERNANDEZ LLP, a California limited liability partnership
> ("we," "us," the "firm" and similar terms) and PAR 5
> PROPERTY INVESTMENTS, LLC., a California Limited Liability
> Company (individually and collectively "you," the "Client"
> and similar terms...

> 2.     LEGAL SERVICES TO BE PROVIDED.  We will provide
> representation in a Subchapter V Chapter 11 bankruptcy to
> be filed in the United States Bankruptcy Court for the
> Eastern District of California...

> ...

> 5.     SECURITY RETAINER; LIEN.  You have agreed to provide a
> retainer of $35,000.00 as an advance payment for attorney's
> fee as well as costs and expenses, as well as the court's
> filing fee of $1,738.00 for a total retainer of *$36,738.00.*
> *You have agreed to wire $10,000 to us today, June 25, 2021,*
> *and the balance in the amount of $26,738.00 on Tuesday,*
> *June 29, 2021.*  We expect to file the case by the close of
> business on that day.  You hereby grant the firm a lien
> against all funds held as a retainer to secure the payment
> of attorney's fees, costs and expenses.  The firm's fees,
> costs and expenses will be charged against this retainer.
> *The retainer, as well as any future deposit, will be held*
> *in a trust account.*  You authorize us to use that fund to
> pay fees and other charges as they are incurred.  You
> acknowledge that the initial retainer is not an estimate of
> total fees and charges, but rather an advance for security.
> If any funds remain on deposit at the conclusion of the
> matter, the deposit will be applied to any unpaid fees and
> charges, and you will be responsible for any amount due
> over and above the deposit or be entitled to a refund of
> any amount remaining.

> ...

> 8.     BILLING AND PAYMENT.  *Unless a bankruptcy case is*
> *pending and active*, the following terms apply: Our bills
> are due upon receipt and are past due ten (10) calendar
> days after mailing...

> WHEREFORE, by signing below, the parties agree to the
> foregoing terms and conditions.

> Dated: June 25, 2021          PAR 5 PROPERTY INVESTMENTS, LLC
>                               A California Limited Liability
>                               Company

```
By: _____/s/_____
Joseph Frank Prach, Managing
Member
```

Dated: June 28, 2021      MACDONALD FERNANDEZ LLP

```
By: _____/s/_____
Iain Macdonald, Partner
```

### PERSONAL GUARANTEE

JOSEPH FRANK PRACH (the "Guarantor") hereby guarantees the indebtedness of PAR 5 PROPERTY INVESTMENTS, LLC, referred to in this Legal Services Agreement, above. Guarantor agrees to be liable for said indebtedness and all amounts due under the Agreement, including but not limited to attorney's fees, costs, expenses and interest. Guarantor waives notice of demand and presentment prior to enforcing this Personal Guarantee.

```
Dated: June 25, 2021      _____/s/_____
                          Joseph Frank Prach
```

Legal Services Agreement, Exh. 1 to Macdonald Decl., ECF No. 275 (emphasis original and added).

On June 28, 2021, Par 5 Investments paid the firm $10,000 and Prach paid the firm $27,538. Ex. To Macdonald Decl., Trust Account Ledger p. 3, ECF No. 313. Those funds were deposited into Macdonald Fernandez LLP's trust account.

On June 29, 2021, Par 5 Investments filed a Subchapter V, Chapter 11 bankruptcy. Vol. Pet., ECF No. 1. It did so by skeletal petition. On the date of the petition, Macdonald Fernandez LLP held $37,538.00 in its trust account.

On the same day, Macdonald Fernandez LLP sent Par 5 Investments an invoice for services rendered during the four days prior to filing its Chapter 11 petition. Ex. 3 pp. 11-13 to Reply by Macdonald Fernandez LLP, ECF No. 267. The amount of that invoice was $7,866.50. No costs (including the filing fee) were included.

Walter Dahl was appointed, and remains, the Subchapter V trustee. Notice, ECF No. 7.

On July 9, 2021, without seeking court approval, Macdonald Fernandez LLP paid itself $7,866.50 from the trust account in full satisfaction of the June 21, 2021, invoice. Ex. to Macdonald Decl., Trust Account Ledger p. 3, ECF No. 313. After the payment, Macdonald Fernandez LLP held $29,671.50 in trust for Par 5 Investments.

**B.    Macdonald Fernandez Seeks Employment**

On July 14, 2021, Macdonald Fernandez LLP sought approval to be employed as counsel for the debtor.  Appl. to Employ, ECF No. 24. That application stated:

> Other than as described herein, neither I, nor Macdonald Fernandez LLP, nor any member or employee of the Firm, has any connection with the Debtor in Possession; its known employees, creditors, attorneys or accountants; the United States Trustee, or any person employed with the Office of the United States Trustee; nor holds an interest adverse to the estate, and is a "disinterested person" within the meaning of Bankruptcy Code Section 101(14) and as required by Bankruptcy Code Section 327(a).

*Id.* at 2:16.

The application was supported by Macdonald's declaration.  In support of the application, Macdonald stated, "The Firm does not have a prepetition claim against the estate."  Macdonald decl. 1:25, ECF No. 25.  Macdonald represented: "The firm received the sum of $35,000[1] from the Debtor's principal, Joseph Francis Prach, as an advance against fees incurred by the firm, and the firm, upon applying to the

---

[1] Both the source of payment and the amount are incorrect.  As to the source of payment, the most reliable evidence is MacDonald Fernandez LLP's Client Ledger. Ex. A, Trust Account Ledger p. 3 to Macdonald Decl., ECF No. 313. That shows $10,000 paid by the debtor and $27,538.00 paid by Prach.  The amount is also incorrect.  The amount paid was $37,538.00, not $35,000.  The difference appears to be $1,738 collected for the filing fee and $800 collected for a LawPay fee.

court for compensation, will request authority to reimburse the

principal from amounts received from the Debtor's estate." *Id.* at

2:3-5.  Neither the application, nor the declaration, mention a

personal guarantee of Macdonald Fernandez LLP's fees and/or costs.

Moreover, Macdonald's fee agreement was not filed with the court.

Neither the application, nor the declaration in support, mention that

post-petition and immediately prior to filing the application for

employment Macdonald Fernandez LLP paid itself $7,866.50.  Ex. to

Macdonald Decl., Trust Account Ledger p. 3, ECF No. 313.

On July 22, 2021, the court approved Macdonald Fernandez LLP's

employment.  In the pertinent part, the order stated:

> 2.  No compensation is permitted except upon court order
> following application pursuant to Bankruptcy Code Section
> 330(a).
>
> ...
>
> 4.  *All funds received in connection with this matter* for
> post-petition services, regardless or whether denominated
> as a retainer or as a non-refundable flat fee, *are deemed*
> to be an advance payment of fees and *to be property of the
> estate*.
>
> 5.  *Funds that are deemed to constitute an advance payment
> of fees shall be maintained in a trust account* with an
> authorized depository, which account may be either a
> separate interest[-]bearing account or a trust account
> containing commingled funds. *Withdrawals are permitted only
> after approval of an application for compensation and after
> the Court issues an order authorizing disbursement of a
> specific amount*.

Order, ECF No. 32 (emphasis added).

**C.   Par 5 Investments Stipulates to Its Removal from Possession**

On July 16, 2021, between the date Macdonald Fernandez LLP filed

its application to be employed and the date the court approved that

employment, Macdonald made a strategic move to increase trust, and

reduce hostilities, between the debtor and Sutherland trust; he

engineered an emergency stipulation to remove debtor from possession of the estate and allow trustee Dahl to assume the expanded trustee duties described in Subchapter V of Chapter 11.  Stip., ECF No. 29 (11 U.S.C. § 1183(b)(5) describing the expanded powers of the trustee).  That stipulation was approved first on an emergency and, later, on a final basis.  Orders, ECF Nos. 30, 58.

On July 27, 2021, with Macdonald Fernandez LLP's assistance, Par 5 Investments filed the remainder of the schedules and statements required.  Those schedules revealed that Prach was a co-debtor for no fewer than 24 of Par 5 Investment's scheduled debts.  Schedule H, ECF No. 36. Consistent with the employment application, those filings show that Macdonald Fernandez LLP received $35,000.  Statement of Financial Affairs, Item No. 11, ECF No. 36; Disclosure of Compensation, ECF No. 36.  But the representations are inconsistent as to the source of those payments.  *Compare* Statement of Financial Affairs, Item No. 11, ECF No. 36 ($35,000 paid by Prach) *with* Disclosure of Compensation, ECF No. 36 ($35,000 paid by the debtor).

On August 9, 2021, Macdonald Fernandez LLP generated another invoice for services rendered and costs incurred, this time in the amount of $30,156.50 (including the $1,738.00 filing fees).  Ex.3 pp. 14-23 to Reply by Macdonald Fernandez LLP, ECF No. 267.  On the same day and without court approval, Macdonald Fernandez LLP paid itself $29,671.50 from the trust account for services rendered.  After deducting that amount, Macdonald Fernandez LLP held no funds in trust for Par 5 Investments and Par 5 Investments owed the firm an additional $485.00.  Ex. A, Trust Account Ledger p. 3 to Macdonald Decl., ECF No. 313.

On September 9, 2021, Macdonald Fernandez LLP generated another

invoice for services rendered and costs incurred, this time in the amount of $7,423.00. Ex. 3 pp. 134-23 to Reply by Macdonald Fernandez LLP, ECF No. 267. The firm requested no costs.[2]

On September 16, 2021, Prach, personally, paid Macdonald Fernandez LLP $7,423.00. Reply by Macdonald Fernandez LLP 2:23, 4:5-10, ECF No. 267. Those funds were not deposited into Macdonald Fernandez's trust account but were applied directly to the firm's outstanding invoice. See Ex. A, Trust Account Ledger p. 3, to Macdonald Decl., ECF No. 313 (no activity after August 10, 2021).

On September 24, 2021, Macdonald Fernandez LLP, filed its first supplemental disclosure indicating that Prach, personally, paid it an additional $7,423.00 for fees and costs. Disclosure of Compensation, ECF No. 105.

Between November 2021, and January 2022, Macdonald Fernandez generated three more invoices, aggregating $11,711.30. Ex. 3 pp. 28-35 to Reply by Macdonald Fernandez LLP, ECF No. 267.

On January 11, 2022, Prach paid Macdonald Fernandez LLP $12,196.30.[3] Second Supplemental Disclosure of Compensation, ECF No. 171. That amount was not deposited into Macdonald Fernandez's trust account but applied directly to outstanding invoices.

On January 14, 2022, Par 5 Investments, acting through Macdonald Fernandez LLP, filed its Second Supplemental Disclosure of Compensation indicating that Prach, personally, paid it an additional $12,196.30 for fees and costs. Disclosure of Compensation, ECF No. 171.

Between February and June 2022, Macdonald Fernandez LLP generated

---

[2] The $485 unpaid from the August 2021, invoice carried forward unpaid.
[3] That amount included the $485 carried forward from the August 2021, invoice.

five invoices to Par 5 Investments, aggregating $43,437.49. Ex. 3 pp. 37-54 to Reply by Macdonald Fernandez LLP, ECF No. 267. That amount remains unpaid.

### D. MacDonald Fernandez LLP Applies for Fees and Costs

In April 2022, Macdonald Fernandez LLP filed its First Interim Application for Compensation and Reimbursement of Expenses. First Interim Appl. Comp., ECF No. 224. The application sought $40,202.50 in fees and $1,738.00 in costs for an aggregate of $41,940.50. *Id.* at 2:11-17. The firm sought compensation for 94.4 hours by three different billers. *Id.* at 6:20. Timekeepers who worked on the case were: (1) Iain A. Macdonald, partner: $690/hour; (2) Daniel Vaknin, associate: $335/hour; and (3) Brenda Johnson, paralegal: $175/hour. *Id.* at 5:5-8. The application did not specify the period for which fees were sought, Application, ECF No. 224, but time records submitted in support of the application show time expended from June 29, 2021 (the day the petition was filed) through August 4, 2021 (the date the court gave final approval for removal of the debtor from possession). Order, ECF No. 58.[4] The application stated:

> <u>Prior Compensation</u>. There have been no prior requests or awards for compensation or reimbursement of expenses. The Firm [Macdonald Fernandez LLP] held unapplied fees of $29,648.50, much of which was from the Debtor's principals or other entities on the petition date." *Id.* at 2:8-10.[5]

Neither the application, nor supporting documentation, mentioned: (1)

---

[4] Apparently, counsel for the debtor believes that it may not collected fees after the debtor is removed from possession in a Subchapter V Chapter 11 case. Mem. P.& A. 3:15-19, ECF No. 311. Debtor's counsel citing *Lamie v. U.S. Trustee (In re Lamie)*, 540 U.S. 526 (2004) (Chapter 7 case). Some courts have so ruled. *In re NIR W. Coast, Inc.*, 638 B.R. 441 (Bankr. E.D. Cal. 2022). This court need not reach that question.

[5] The court is unclear as to the meaning of "unapplied fees of $29,648.50. It does not match the fee request, $41,940.50, less the two payments: $7,866.50 and $29,671.50. That amount would be $4,402.50.

the balance of Macdonald Fernandez LLP's trust account; (2) the firm's

post-petition payment of pre-petition fees $7,866.50 from trust

account funds; or (3) the firm's payment of August 9, 2021, invoice

(covering June 30, 2021, to July 30, 2021) in the amount of $29,671.50

from trust account funds.  Neither the application, nor supporting

documents, disclose Prach's personal guarantee of Macdonald Fernandez

LLP's fees; additionally, those documents do not disclose the amount

Macdonald Fernandez LLP is holding in trust.

In response, trustee Dahl raised concerns about the impact of

Macdonald Fernandez LLP's fees on performance of the plan, as well as

the amount of the fees and the period of time for which compensation

was sought.  Resp., ECF No. 235.  At the hearing on the motion,

trustee Dahl augmented his concerns about Macdonald Fernandez LLP's

fees, informing the court that: (1) Prach had personally guaranteed

fees due Macdonald Fernandez LLP in arising from the Par 5

Investment's bankruptcy and that the personal guarantee had not been

appropriately disclosed in the employment application; (2) that Prach

paid Macdonald Fernandez LLP for Par 5 Investment's post-petition

services without court approval; and (3) accounting discrepancies

existed in the Macdonald Fernandez LLP's representations.  Tr. Hr'g.

on Appl. Compensation at 6:17-7:9, 8:2-9:3, 10:2-12:8, 22:23-23:6, May

23, 2022, ECF No. 330.  The colloquy between the court and trustee

Dahl proceeded as follows:

> THE COURT: Thank you.  Was that the additional problem, Mr.
> Dahl?
>
> MR. DAHL: Yes, Your Honor.  and I –
>
> THE COURT: Has this—
>
> MR. DAHL: --there's a – there's this –there's a relatively
> minor—minor -minor other issue—

THE COURT: Oh.

MR. DAHL: -- which is, well, actually it may not be minor. But it's hard to understand how much money the Macdonald Fernandez firm has or had upon the filing.  The Rule 2016 statement that came with the schedules, it's the last page of the schedules, docket 36, indicates the firm was paid $35,000.  The application to employee [sic] the firm indicates that the firm had on deposit $26,843, and that's docket 25.  The statement of financial affairs docket, item number 36 at question 11, discloses that the firm got a payment of $10,0000, which followed by a payment of $25,000 for a total of [$]35[,000], which matches the Rule 2016(b) statement.

The – this application, the fist [sic] application states that the firm has or had, $29,648.50 and --

...

MR. DAHL: Oh, and finally, the firm's most recent statement issued to Frank Prock [sic], which I have a copy of, is dated May 22, 2022, and it shows a trust balance of zero dollars.

*Id.* at 10:2-11:3.

Based on the concerns raised by the Subchapter V trustee the court denied the Application for Compensation without prejudice.  Order, ECF No. 252.

### E.   Macdonald Fernandez LLP Withdraws the Denied Fee Application

Almost two weeks after the court denied the application for compensation, Macdonald Fernandez LLP filed a "Notice of Withdrawal of First Interim Application for Approval of Compensation."  Notice, ECF No. 255.

In response, trustee Dahl outlined areas of concern arising related to Macdonald Fernandez LLP's receipt and handling of retainers in this case: (1) the amount of the pre-petition retainer; (2) source of the pre-petition retainer; (3) post-petition invoices; (4) post-petition payments; (5) supplement Rule 2016(b) statements; and (6) trust accountant balance as of May 9, 2022.  Reply, ECF No. 261.

Macdonald Fernandez LLP filed a reply to trustee Dahl's concerns. Reply, ECF No. 267. The reply answered some of Dahl's questions and, in other areas, admitted accounting errors. Resp., ECF No. 267. It stated that payments to Macdonald Fernandez LLP by, or on behalf of, Par 5 Investments aggregated $57,157.30, pre-petition and post-petition. Of that amount $37,538.00 ($10,000 by Par 5 Investments and $27,538 by Frank Prach) was paid pre-petition. *Id.* at 2:21-24. The remainder, $19,619.30, was paid post-petition by Prach. *Id.* Macdonald Fernandez LLP explained that it sent Par 5 Investments and/or Prach 1 pre-petition invoice and 10 post-petition invoices. *Id.* at 3:21-25. Most telling was Macdonald Fernandez LLP's response to a zero trust account balance. Dahl's Reply raised the following concern: "Trust Account. According to the invoice dated 9-May-2022, no monies are currently held in a trust account which apparently conflicts with the Order authorizing employment [Docket # 32]." Reply 2:16-17, ECF No. 261. Macdonald Fernandez LLP responded: "This is correct. The invoices do not show monies held in a trust account because no funds received for post-petition services were property of the estate, having been paid by Mr. Prach." *Id.* at 4:13-19.

**F.    Chapter 11 Plan**

Prior to plan confirmation, trustee Dahl sold most of the debtor's real and personal property, e.g., 17-acre golf course, resolving most of the claims of secured creditors.

Consistent with the mandates of Subchapter V of Chapter 11, Par 5 Investments--acting through Macdonald Fernandez LLP--proposed, and this court confirmed, a plan of reorganization. Plan, ECF Nos. 233,

302.[6]  As of the date of confirmation, trustee Dahl held approximately $306,000 and hoped to recover additional funds by sale of a Type 57 liquor license and avoidance of preferential transfers.  The plan provided: (1) assets of the estate would remain under the supervision and control of trustee Dahl, and not revest in the debtor, Plan § 7.01, ECF No. 233; (2) Dahl would continue to liquidate Par 5 Investment's assets, *id.*; and (3) that it would pay administrative claimants and, to the extent of available funds, priority creditors. *Id.* at 2.01-4.01.

### G.    PROCEDURE

Troubled by the information received at the hearing on Macdonald Fernandez' first interim fee application, this court issued two orders to show cause to Macdonald Fernandez LLP for revocation of the employment order.  The first Order to Show Cause for failure to disclose Frank Prach's personal guarantee of Par 5 Investment's legal fees arising from its bankruptcy.  Order to Show Cause, ECF No. 271. The second Order to Show Cause for failure to obtain leave of court prior to withdrawing funds from Macdonald Fernandez LLP's trust account.

Thereafter, the U.S. Trustee filed a motion to "review and return" attorney's fees paid by the debtor and by Prach.  Mot. to Review and Return Attorney's Fees, ECF No. 327.  The United States Trustee cited three bases for its motion: (1) failure to disclose Prach's personal guarantee; (2) Macdonald Fernandez LLP's application of trust funds to outstanding invoices without leave of court; and (3) violation of ethical standards.

---

[6] In Subchapter V of Chapter 11, only the debtor may propose a plan.  11 U.S.C. § 1189(a).

## II.   JURISDICTION

This court has jurisdiction, 28 U.S.C. §§ 1334, 157(a), (b)(1); General Order No. 182 of the U.S. District Court for the Eastern District of California; this is a core proceeding in which this court may enter final orders and judgment, 28 U.S.C. § 157(b)(2)(A)-(B); *In re Castellucci*, 2007 WL 7540955 * 5 (9th Cir. BAP July 26, 2007); *In re Miller*, 620 B.R. 637, 640 (Bankr. E.D. Cal. 2020) (employment and compensation of professionals).

## III.  LAW

### A.   Employment

Professionals employed to assist the debtor in possession and/or trustee are regulated by the bankruptcy code and rules.

Section 327 of the code describes who is eligible to be employed to assist the debtor and/or trustee in bankruptcy.

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

"[D]isinterested" is a defined term.

The term "disinterested person" means a person that--

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

Adverse interest is not a defined term but has a well-accepted meaning.

> A generally accepted definition of "adverse interest" is the (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate.

*In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 625-26 (Bankr. E.D. Cal. 2012), citing *Dye v. Brown (In re AFI Holding, Inc.) (AFI Holding I)*, 355 B.R. 139, 148-49 (9th Cir. BAP 2006).

Section 327 is implemented by Rule 2014, which governs applications for employment; in the pertinent part, that rule provides:

> *The application shall state* the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, *any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest*, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. *The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with* the debtor, creditors, *any other party in interest, their respective attorneys* and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a) (emphasis added).

As one court thoughtfully articulated the standards in Rule 2014(a):

> The disclosure requirements of Bankruptcy Rule 2014(a) are strictly applied with the burden on the applicant to come forward and make full, candid, and complete disclosure of all connections with the debtor, debtor in possession, insiders, creditors, and parties in interest regardless of how old or trivial the connections may be. (citations

omitted). 'It is the bankruptcy court that determines
whether a professional's connections render him or her
unemployable under § 327(a)— not the other way around.'

*In re NIR W. Coast, Inc.*, 638 B.R. 441, 449 (Bankr. E.D. Cal.
2022).

"[T]he need for professional self-scrutiny and avoidance of

conflicts of interest does not end upon appointment." *Rome v.*

*Braunstein*, 19 F.3d 54, 57-58 (1st Cir. 1994); *In re Sundance Self*

*Storage-El Dorado LP*, 482 B.R. 613, 625, fn. 32 (Bankr. E.D. Cal.

2012).

**B.    Compensation**

Like employment, compensation of estate professionals is also

regulated by the bankruptcy code.

> *After notice* to the parties in interest and the United
> States Trustee *and a hearing*, and subject to sections 326,
> 328, and 329, *the court may award to a trustee, a consumer
> privacy ombudsman appointed under section 332, an examiner,
> an ombudsman appointed under section 333, or a professional
> person employed under section 327* or 1103--
>
> (A) reasonable compensation for actual, necessary services
> rendered by the trustee, examiner, ombudsman, professional
> person, or attorney and by any paraprofessional person
> employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1) (emphasis added).

Section 330 is implemented by Rule 2016, which governs

applications for compensation; in the pertinent part that rule

provides:

> *An application for compensation shall include* a statement
> as to what payments have theretofore been made or promised
> to the applicant for services rendered or to be rendered in
> any capacity whatsoever in connection with the case, *the
> source of the compensation so paid or promised*...

Fed. R. Bankr. P. 2016(a) (emphasis added).

Court approval is mandatory for professionals seeking

compensation from the estate.  11 U.S.C. § 330(a); Fed. R. Bankr. P. 2016(a); *In re Knudsen Corp.*, 84 B.R. 668, 672 (B.A.P. 9th Cir. 1988) ("professionals must file applications for compensation which are subject to a noticed hearing prior to allowance or payment of fees").

### C.     Remedies for Noncompliance

This court has discretion to determine an appropriate remedy as it considers: (1) counsel's failure to disclose connections with the debtor, creditors, and/or parties in interest under Rule 2014(a); (2) counsel's failure to seek an order approving employment in a timely fashion; (3) counsel's inaccurate representations with respect to the application for employment; and (4) counsel's failure to seek leave of court before applying funds held in trust.  *Compare* In re Park-Helena Corp., 63 F.3d 877, 880-882 (9th Cir. 1995) (failure to disclose all connections is, itself, a basis to deny all compensation) *with In re Film Ventures Intern, Inc.*, 75 B.R. 250, 253 (9th Cir. BAP 1987) (bankruptcy court may excuse original failure to disclose connections); *see also*, *In re Atkins*, 69 F.3d 970, 975-976 (9th Cir. 1995) (exceptional circumstances justifying retroactive employment); *In re Lewis*, 113 F.3d 1040 (9th Cir. 1997) (failure to seek timely employment and failure to seek approval of fees).

The court's authority to award or deny compensation is inherent to the court's role in employing and compensating professionals employed by the estate.  *In re Lewis*, 113 F.3d 1040 (9th Cir. 1997); *In re Park-Helena Corp.*, 63 F.3d 877, 882 (9th Cir. 1995) (court had discretion to deny all fees where the attorney failed to disclose a $150,000 pre-petition retainer from the debtor's principal shareholder).

Among the remedies, the court may employ is disgorgement of any

monies paid to an attorney in connection with representation of the

debtor. *In re Lewis*, 113 F.3d 1040 (9th Cir. 1997). The court need

not review fees for reasonableness, 11 U.S.C. § 329. That authority

exists without regard to the source of the payment. *Id.*; *In re*

*Walters*, 868 F.2d 665, 668 (4th Cir. 1989) ("[A]ny payment made to an

attorney for representing a debtor in connection with a bankruptcy

proceeding is reviewable by the bankruptcy court notwithstanding the

source of payment"); *In re Land*, 943 F.2d 1265, 1267 (10th Cir. 1991);

*In re 38-36 Greenville Ave LLC*, No. 21-2164, 2022 WL 1153123, at * 4

(3d Cir. Apr. 19, 2022), cert. denied sub nom. *Kevin Kervang Tung,*

*P.C. v. Forman*, No. 21-1605, 2022 WL 4652203 (U.S. Oct. 3, 2022).

**IV.   DISCUSSION**

**A.   Violations of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure**

**1.   Failure to make full and accurate disclosures**

At least three flavors of disclosure errors exist. At the

outset, the application fails to mention the third-party guarantee by

Frank Prach. Rule 2014 specifically requires that the application

describe "any proposed arrangement for compensation." Third-party

guarantees are not necessarily disqualifying interests under § 327 but

must be disclosed. *In re Sundance Self Storage-El Dorado LP*, 482 B.R.

613, 632 (Bankr. E.D. Cal. 2012) ("Thus, apparently [debtor's counsel]

was relying solely on [the guarantor], and not on the debtor, for any

compensation over and above the amount of his retainer"). Since the

fee agreement was not appended to the application, the court was

deprived of the opportunity of confirming Macdonald Fernandez's

representations.

Additionally, the declaration offered in support of the

application states that "[Macdonald Fernandez] does not have a pre-petition claim against the estate."  Macdonald decl. 1:25-28, ECF No. 25.  This is not true; the firm was owed $7,886.50 on the petition date.  Ex. 3 pp. 11-13 to Reply by Macdonald Fernandez LLP, ECF No. 267.  Historically, a debt owed by the bankrupt debtor to proposed counsel is a disqualifying interest.  *In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 631 (Bankr. E.D. Cal. 2012).  The Small Business Reorganization Act ("SBRA") carved out a small exception to this rule.  "Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title, by a debtor solely because that person holds a claim of less than $10,000 that arose prior to commencement of the case."  11 U.S.C. § 1195. But the SBRA did not alter Rule 2014(a)'s duty of disclosure as to "all of the person's connections with the debtor."  Moreover, even if disclosed, the existence of a prepetition debt between the bankrupt debtor and proposed counsel aggregated with other connections may be a disqualifying interest.  11 U.S.C. § 1195 (an applicant is not disqualified "solely" by virtue of a prepetition debt).

Finally, the source and amount of the retainer on the date of the petition was inaccurate.  As to the source of payment, the application represents that $35,000 was paid by Frank Prach.  Macdonald decl. 2:3-5, ECF No. 25.  In reality, $10,000.00 of the retainer was paid by the debtor and $27,538.00 by Prach.  Ex. A, Trust Account Ledger p. 3 to Macddonald Decl., ECF No. 313.  The amount of the retainer was also inaccurate.  Macdonald Fernandez represented that it held $26,843.00 at filing.  Macdonald decl. 1:25-27, ECF No. 25.  Actually, the firm held $37,538.00 on the date of the petition.  Ex. A, Trust Account

Ledger p. 3 to Macdonald Decl., ECF No. 313.[7]

### 2.   Adverse interest

Macdonald Fernandez held an interest adverse to the estate by virtue of its post-petition payment of Par 5 Investments prepetition debt ($7,866.50) to it.  Because the law firm had not drawn down the retainer prior to the filing of the Par 5 Investment bankruptcy petition, the entire $37,538.00 was property of the estate.[8]  *In re Woodcraft Studios*, Inc., 464 B.R. 1, 14 (N.D. Cal. 2011); *Barron v. Countryman*, 432 F.3d 590, 595-596 (5th Cir. 2005).  Section 549 provides:

> (a) Except as provided in subsection (b) or (c) of this section, *the trustee may avoid a transfer of property of the estate--*
>
> (1) *that occurs after the commencement of the case*; and
>
> (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
>
> (B) *that is not authorized under this title or by the court.*

11 U.S.C. § 549(a) (emphasis added).

Moreover, since § 1195 excepted Macdonald Fernandez LLP's pre-petition debt as a disqualifying interest, 11 U.S.C. § 327, the firm could merely have sought leave of court to withdraw funds from its

---

[7] There are two layers of errors here.  First, the applicant appears to represent that the pre-petition amounts due the firm had been deducted from its trust account prior to filing the petition.  That is not true.  The pre-petition fees ($7,866.50) were paid from the applicant's trust account on July 9, 2021, the filing fees ($1,738.00) were deducted from the applicant's trust account on August 10, 2021.  It is unclear when the LawPay fee ($800.00) was paid.  Second, even if those amounts had been deducted from the trust account before the petition was filed, the applicant's math is incorrect; the amount in trust would have been $27,133.50 ($37,538.00 less pre-petition fees $7,866.00 less filing fees $1,738.00 less LawPay fee $800).  Reply by Macdonald Fernandez LLP 2:7-10, 267.

[8] Macdonald Fernandez could have sought court authority for payment of the prepetition fees under 11 U.S.C. § 330.  *In re Busetta-Silvia*, 314 B.R. 218 (10th Cir. BAP 2004).

trust account.  11 U.S.C. § 330; *In re Busetta-Silvia*, 314 B.R. 218 (10th Cir. BAP 2004) (Chapter 13).  Had it done so, the firm would have avoided the jaws of 11 U.S.C. § 549.  But it did not do so and, as a result, created an adverse interest in the form of a plausible, unresolved avoidance action.

Unresolved avoidance actions preclude employment of the involved professional.  *In re Dexter Distrib. Corp.*, No. BAP AZ-09-1386MKKIJU, 2010 WL 6466583, at * 7 (B.A.P. 9th Cir. Oct. 21, 2010) (preference action); *In re Triple Star Welding, Inc.*, 324 B.R. 778, 783 (B.A.P. 9th Cir. 2005), abrogated by *In re AFI Holding, Inc.*, 530 F.3d 832 (9th Cir. 2008).

Here, between the date of the petition and the application for employment Macdonald Fernandez deducted prepetition fees from its trust account.  It did so without authorization; that payment was not disclosed and would be avoidable.

Any argument that advanced court approval was unnecessary for trust monies paid by a third-party, i.e., Frank Prach, is foreclosed. Not less than $10,000 was paid to Macdonald Fernandez by Par 5 Investments.  Moreover, longstanding circuit law applies the approval of court requirement of § 330 trust funds paid by a third-party on behalf of the debtor.  *In re Lewis*, 113 F.3d 1040 (9th Cir. 1997).

### 3.   Payment without court approval

On four occasions post-petition Macdonald Fernandez affirmatively paid itself from the trust account or received funds from Prach without court approval.  A professional must obtain court approval prior to accepting payment.  11 U.S.C. § 330 (after notice "the court may award" compensation and expenses); *In re Woodcraft Studios*, Inc., 464 B.R. 1, 12 (N.D. Cal. 2011); *In re Knudsen Corp.*, 84 B.R. 668, 672

(B.A.P. 9th Cir. 1988).  Circuit law authorizes the court to deny

compensation for violation of the employment or compensation statutes.

> The Bankruptcy Code contains a number of provisions (e.g.,
> §§ 327, 329, 330, 331) designed to protect the debtor from
> the debtor's attorney. See, e.g., *In re Walters*, 868 F.2d
> 665, 668 (4th Cir.1989) (noting that § 329 and Rule 2017
> are designed to protect the creditors and the debtor
> against overreaching by attorney). *As a result, several
> courts have recognized that the bankruptcy court has broad
> and inherent authority to deny any and all compensation
> when an attorney fails to meet the requirements of these
> provisions...*
>
> *We agree with these courts*, and so we have little
> difficulty in rejecting [debtor's counsel's] argument that
> the bankruptcy court's disgorgement order must be reversed
> because the court made no findings of excessiveness under §
> 329.

*In re Lewis*, 113 F.3d 1040, 1045 (9th Cir. 1997) (emphasis
added).

Moreover, insofar as Macdonald Fernandez removed the $37,538.00

from its own trust account, the firm violated Rule of Professional

Conduct 1.15.  In the pertinent part, that rule provides:

> (a) All funds received or held by a lawyer or law firm for
> the benefit of a client, or other person to whom the lawyer
> owes a contractual, statutory, or other legal duty,
> including advances for fees, costs and expenses, shall be
> deposited in one or more identifiable bank accounts labeled
> "Trust Account" or words of similar import, maintained in
> the State of California, or, with written consent of the
> client, in any other jurisdiction where there is a
> substantial relationship between the client or the client's
> business and the other jurisdiction.
>
> ...
>
> (c) Funds belonging to the lawyer or the law firm shall not
> be deposited or otherwise commingled with funds held in a
> trust account except:
>
> ...
>
> > (2) *funds belonging in part to a client or other person
> > and in part presently or potentially to the lawyer or
> > the law firm, in which case the portion belonging to
> > the lawyer or law firm must be withdrawn at the
> > earliest reasonable time after the lawyer or law firm's
> > interest in that portion becomes fixed*. However, if a

client or other person disputes the lawyer or law firm's right to receive a portion of trust funds, the disputed portion shall not be withdrawn until the dispute is finally resolved.

Cal. Rule Prof. Conduct 1.15(a),(c) (emphasis added).

While Rule 1.15(c) does not specifically define the word "fixed," commentators make the issue clear:

When attorney's interest "becomes fixed": No legal criteria have been established to determine when an attorney's interest in funds held in a trust account becomes "fixed."

Comment: *An attorney's interest in trust account funds may be earned (after performing the legal services and having sent a billing), but not yet "fixed," because CRPC 1.15(c)(2) (formerly CRPC 4-100(A)(2)) requires the lawyer to maintain any fees not yet approved by the client or disputed on deposit until they are "fixed."*

By implication, an attorney's interest in trust account funds is "fixed" when:

[1] the client expressly approves the attorney's interest in a certain amount of the trust funds (e.g., by expressly approving a billing or an accounting of the funds setting forth the amount of fees earned by the attorney) (see Cal. State Bar Form.Opn. 2006-171); or

[2] the attorney and client agree to the amount of the attorney's interest following a dispute; or

[3] *the amount of the attorney's interest has been set forth in a* civil judgment, *court* order or binding arbitration award.

Mark L. Tuft et al., *California Practice Guide: Professional Responsibility* § 9:162.1-.2 (Rutter Group 2021) (emphasis added).

That source continues:

Definition by agreement: *In the absence of a statute specifically providing for attorney fees*, attorney and client are free to agree to the "measure and mode" of attorney compensation. Consequently, the attorney and client may prescribe when the attorney's interest in earned fees will "become fixed" for purposes of CRPC 1.15(c)(2) (formerly CRPC 4-100). [See CCP § 1021].

*Id.* at § 9:162.3 (emphasis added).

1    Moreover, 11 U.S.C. § 330 is such a statute defining when

2  Macdonald Fernandez' fees were "fixed" within the meaning of Rule

3  1.15(c).

4    Here, on four separate occasions Macdonald Fernandez LLP received

5  payment without court approval: (1) July 9, 2021: $7,866.50 (monies

6  withdrawn from trust account); (2) August 10, 2021: $29,671.50 (monies

7  withdrawn from trust account); (3) September 16, 2021: $7,423.00

8  (application of monies received from Frank Prach without deposit into

9  the trust account); and (4) January 14, 2022: $12,196.30 (application

10  of monies received from Frank Prach without deposit into the trust

11  account).

12    **B.    Remedy**

13    In this case, the facts require complete disgorgement of all

14  funds received.  First, the existence of a facially plausible

15  avoidance action, 11 U.S.C. § 549, results in a per se

16  disqualification.  *In re Dexter Distrib. Corp.*, No. BAP AZ-09-

17  1386MKKIJU, 2010 WL 6466583, at * 8 (B.A.P. 9th Cir. Oct. 21, 2010)

18  (preference action).

19    Second, even if the court had discretion in this case, it would

20  not exercise it in favor of a lesser remedy.  From the applicant's

21  long years before the bar and sophistication, the court infers

22  knowledge of the impropriety of his actions and, in turn, willfulness.

23  Willful disregard of fiduciary obligations weighs in favor of the most

24  severe remedy.  *In re Downs*, 103 F.3d 472, 479 (6th Cir. 1996).

25  Moreover, the number and seriousness of the violations require an

26  unbending response by this court.  As a result, the order of

27  employment will be revoked and the full amount of funds Macdonald

28  Fernandez LLP received, i.e., $57,157.30, will be disgorged.

Since this court believes that both Par 5 Investments' and Prach's interest in these funds appear to have been extinguished, disgorgement will be made to Walter Dahl, Subchapter V trustee. *In re Lewis*, 113 F.3d 1040, 1045 (9th Cir. 1997) (approving deposit of disgorged funds pending resolution of ownership). Property rights are determined by state law. *Butner v. United States*, 440 U.S. 48, 54 (1979); *In re Coupon Clearing Service, Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997). California law provides that a security retainer "remains property of the client (in this case, the estate) until the attorney applies to it charges actually rendered." *In re Dick Cepak, Inc.*, 339 B.R. 730, 736 (9th Cir. BAP 2006); *In re Montgomery Drilling Co.*, 121 B.R. 32, 37 (Bankr. E.D. Cal. 199)); *In re GOCO Realty Fund I*, 151 B.R. 241, 251 n. 11 (Bankr. N.D. Cal. 1993). That rule has been extended to retainers paid by third parties:

> In other words, notwithstanding an ultimate third[-]party owner of the funds, the retainer is held in trust for Debtor's estate to the extent it is utilized to compensate the estate's attorney. The estate, therefore, has an equitable interest in the trust funds. Property of the estate includes any legal or equitable interests of the debtor in property as of the commencement of the case.

*In re Stevenson*, No. 0-10-BK-30556-JMM, 2011 WL 2413172, at * 5 (Bankr. D. Ariz. June 9, 2011); *In re Miller Automotive Group, Inc.*, 521 B.R. 323, 333 (Bankr. W.D. Mo. 2014). Because all funds received from the debtor and/or Prach, whether paid from the trust account or post-petition directly, had been applied to outstanding invoices for services rendered and costs incurred, the court believes that all funds Macdonald Fernandez LLP received were property of the estate. Notwithstanding that belief, the court is aware that Frank Prach is not a party to the present proceedings and should be given the opportunity to be heard as to the disposition of the funds that he

1  personally paid on behalf of Par 5 Investments.  And the court will

2  craft an order allowing Frank Prach to be heard, should he so elect.

3  **V.    CONCLUSION**

4        For each of these reasons, the orders to show cause are sustained

5  and the motion to disgorge granted. The order approving Macdonald

6  Fernandez LLP's employment will be revoked.  Subject to Frank Prach's

7  right to recover some--or all--of the funds that he individually paid,

8  Macdonald Fernandez LLP shall disgorge $57,157.30 to Subchapter V

9  trustee Walter Dahl.  The court will issue an order from chambers.

**Dated:** October 26, 2022


_____
**Fredrick E. Clement**
**United States Bankruptcy Judge**

# Instructions to Clerk of Court

## Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Debtor(s) | Attorney for the Debtor(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | **Office of the U.S. Trustee**<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **J. Francis Prach**<br>100 Harrison Ave, #817<br>Auburn, CA 95604 | **Walter R. Dahl**<br>2304 N St<br>Sacramento, CA 95816-5716 |
| **Placer County Office of the Treasurer - Tax Collector**<br>Robert Kannigiesser Deputy Tax Collector<br>2976 Richardson Dr<br>Auburn, CA 95603 | **Tracy Davis**<br>Attn: Justin C. Valencia<br>2500 Tulare St #1401<br>Fresno, CA 93721 |
| **Sutherland Grantor Trust, Series IV**<br>Attn: Reed S. Waddell<br>1000 Wilshire Blvd 19th Fl<br>Los Angeles, CA 90017 | **Tri Counties Bank**<br>c/o Bruce L. Belton<br>PO Box 992570<br>Redding, CA 96099-2570 |
| **Harvego Real Estate, LLC**<br>Attn: Jason L. Hoffman<br>700 University Ave #100<br>Sacramento, CA 95825 | **AmTrust North America, Inc.**<br>Maurice Wutscher LLP<br>23611 Chagrin Blvd #207<br>Beachwood, OH 44122 |